IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSÉ RAMÓN OCASIO CÓRDOVA

Plaintiff,

v().  CIVIL NO.: 22-1177 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**OPINION AND ORDER**

**I.   Procedural and Factual Background**

Pending before the court is Mr. José Ramón Ocasio Córdova's ("Plaintiff") complaint challenging the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 17. On April 27, 2017, Plaintiff filed an application for Social Security benefits alleging that he initially became unable to work due to disability on March 13, 2015 ("the onset date"). Tr. 15. Prior to the onset date, Plaintiff worked as a professor. Tr. 20. Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. Tr. 17. Plaintiff's disability claim was denied initially on July 28, 2017 and upon subsequent reconsideration. Tr. 15.

Thereafter, Plaintiff requested a hearing which was held on October 23, 2019 before an Administrative Law Judge ("the ALJ"). Tr. 15. On November 4, 2019 the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 21. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1–6.

Plaintiff filed a complaint on April 13, 2022. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 14, 17.

## II.  Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the ALJ's decision dated November 4, 2019, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through September 30, 2015. Tr. 17. At

step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the onset date of March 13, 2015 through the date last insured of September 30, 2015. Tr. 17. At step two, the ALJ determined that Plaintiff had the following severe impairments: "tracheal stenosis and status post tracheostomy." Tr. 17. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17. Next, the ALJ determined that during the relevant period:

> Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could carry, lift, push and pull 20 pounds occasionally and 10 pounds frequently. He could sit, stand and walk 6 hours in an 8-hour workday. Furthermore, he could occasionally climb ramps and stairs and frequently balance, stoop, kneel, crouch and crawl. He had to avoid climbing ladders and scaffolds. The claimant had to avoid exposure to unprotected heights and working with moving mechanical parts. He could occasionally be exposed to dust, odors, fumes and pulmonary irritants.

Tr. 17. At step four, the ALJ determined that during the relevant period, Plaintiff was capable of performing his past relevant work as a professor. Tr. 20. The ALJ consulted a vocational expert who opined that Plaintiff's previous work as a professor as it is actually and generally performed does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. Tr. 21. Accordingly, without proceeding to step five, the ALJ concluded that Plaintiff was not disabled during the relevant period. Tr. 21.

### III.   Analysis

The Plaintiff challenges the determination of the Commissioner of Social Security based on three grounds. First, he argues that the ALJ committed error in the formulation of his RFC. Second, Plaintiff objects to the ALJ's step four determination that Plaintiff could perform his

past work as a professor. Third, the Plaintiff argues that the Appeals Council committed egregious error after the ALJ's decision was rendered. These arguments are addressed in turn.[1]

### A. The ALJ's RFC Determination

Plaintiff raises several objections regarding the ALJ's RFC determination. First, Plaintiff argues that the ALJ improperly "resolved a medical conflict between the non-examining physicians and the treating sources by himself." ECF No. 14 at 10. Plaintiff asserts that the ALJ improperly gave more weight to non-examining physicians than to Plaintiff's examining physicians and failed to give substantial weight to Plaintiff's treating physicians. ECF No. 14 at 11–13.

When formulating a claimant's RFC, the ALJ must base his determination on all relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's descriptions of her limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most he can do despite limitations from his impairments. Id. The claimant bears the burden of providing evidence to establish how his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). "An ALJ cannot rely on raw medical

---

[1] Plaintiff's Memorandum of Law has a nontrivial number of factual errors and misstatements of the record and the ALJ's decision. For example, Plaintiff is referred to as "her" and writes that the "ALJ stopped at the Fourth Step by finding that plaintiff could return to her prior work as hygienist." ECF No. 14 at 10. However, elsewhere in his memorandum of law, Plaintiff refers to himself as a male, and the ALJ's decision clearly states not that Plaintiff worked in the past as hygienist, but rather, as a professor. Tr. 20; see ECF No. 14 at 5–6. Plaintiff also refers to himself by the wrong name, calling himself "Mr. Mangini" rather than José Ramón Ocasio Córdova. ECF No. 14 at 12. These examples suffice at this juncture, but other examples are addressed throughout the opinion and order. Defendant argues that these errors and misstatements which pervade Plaintiff's Social Security Memorandum "appear to be copied from other briefs involving different claimants, and should be deemed waived for lack of development." ECF No. 17 at 5. While the poor state of Plaintiff's Memorandum of Law may provide an independent basis to deny Plaintiff's complaint challenging the decision of the Commissioner of Social Security, the court addresses as much as possible Plaintiff's arguments which are based on the ALJ's decision and the record at hand. See e.g. Handford ex rel. I.H. v. Colvin, 2014 WL 114173, at *11 (N.D. Ill. Jan. 10, 2014) (noting in a Social Security appeal, "perfunctory and undeveloped arguments" are deemed waived.); Rusli v. Mukasey, 282 F. App'x 1 (1st Cir. 2008) (rejecting a challenge to an immigration judge's decision when the petitioner offered "a 'cut and paste' affair that appears to present the facts of another case-notably for a person of a different gender than Rusli, who had different experiences, in different years, and appeared before a different immigration judge.").

data; rather, he must look to physician's opinions to translate that evidence into functional terms." Valentín-Rodríguez v. Comm'r of Soc. Sec., 2014 WL 2740410, at *7 (D.P.R. June 17, 2014). However, the appropriate weight to be given evidence provided by Plaintiff's treating physicians is subject to recent regulatory changes. Previously, for cases filed before March 27, 2017, ALJs were required by the applicable regulations to afford "controlling weight" to the medical opinions from a plaintiff's "treating sources" absent special circumstances such as, for example, conflicting evidence or findings among treating physicians or conclusory remarks. 20 C.F.R. § 404.1527(c)–(c)(2). That standard was rescinded and replaced by a new standard in the Code of Federal Regulations for cases filed after March 27, 2017, requiring that ALJs not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [plaintiff's] medical sources." 20 C.F.R. § 404.1520c. Instead, an ALJ must consider a series of five factors when considering medical opinions and prior administrative medical findings, the most important of which are "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2); (c)(1)–(2) (the five factors being supportability, consistency, relationship with the plaintiff, specialization, and other factors). When assessing "supportability" the ALJ should find the opinion of a medical provider more persuasive "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[.]" 20 C.F.R. § 404.1520c(c)(1). Regarding "consistency," the ALJ shall compare the physician's opinion to the other evidence in the record, and "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

In this case, the ALJ's decision shows that he cited medical opinions and properly weighed those opinions according to their supportability and consistency with the medical evidence and other opinions in the record. First, the ALJ considered the evidence which led him to conclude that Plaintiff's suffered severe impairments of tracheal stenosis and status post tracheostomy during the relatively short period of Plaintiff's Social Security coverage from March 13, 2015 to September 30, 2015. Tr. 18–19. Consideration of evidence outside of the period of insurance coverage is proper as the "ALJ may consider medical evidence <u>after</u> the [date last insured] for what light (if any) it sheds on the question whether claimant's impairment(s) reached disabling severity before claimant's insured status expired." <u>Patoski v. Berryhill</u>, 320 F. Supp. 3d 283, 291 (D. Mass. 2018) (citing <u>Moret Rivera v. Sec'y of Health & Hum. Servs.</u>, 19 F.3d 1427 (1st Cir. 1994) (unpublished table opinion) (internal quotations omitted)).

Plaintiff was admitted to "Hospital San Juan" on March 13, 2015 and discharged on June 16, 2015. Tr. 3682–3683, 6123–24. Plaintiff presented "in acute respiratory distress" and shortness of breath and reported that he had trouble sleeping horizontally for the last three weeks, assessed as paroxysmal nocturnal dyspnea. Tr. 6122–25. Plaintiff was finally diagnosed with acute respiratory failure, bilateral empyema, bilateral pneumothorax, fungal bacteremia, complicated urinary tract infection, and deconditioning. Tr. 6124. Plaintiff was also diagnosed with arterial fibrillation and had to be intubated with an endotracheal tube. Tr. 3685, 6121, 6457–58. In addition, Plaintiff was treated with medication and "physical therapy." Tr. 3686. Upon discharge on June 16, 2015 the ALJ credited Plaintiff's complaints, writing that he was "bedridden and required activities of daily living," but notes that the discharge summary of June 16, 2016 describes Plaintiff's condition as "stable" and stated that his allowable physical activity "as tolerated" and "not restricted." Tr. 19, 6124. The evidence in the record indicates that in

October 2015 Plaintiff was diagnosed with tracheal stenosis and the ALJ noted that ultimately a tracheotomy was performed on Plaintiff on October 15, 2015, over two weeks "after the date last insured." Tr. 19, 43, 3252–54. The ALJ's decision notes that Plaintiff's tracheotomy was in place for around eleven months until it was eliminated in a tracheoplasty performed on September 9, 2016. Tr. 19, 6025–27. Following Plaintiff's tracheoplasty in September 2016, the ALJ concluded that all of Plaintiff's symptoms were eliminated. Tr. 19. The ALJ cited a chest x-ray from September 11, 2016 showing no evidence of collapsed lung (pneumothorax) in Plaintiff, and that at the hearing Plaintiff "was able to speak without any difficulty." Tr. 19, 3333. Indeed, the transcript of the hearing shows that Plaintiff was able to give long, detailed testimony regarding his own medical conditions and procedures. See Tr. 28-56.

In comparing the consistency of the above evidence with the medical opinions, it is important to note that Plaintiff fails to cite any medical opinions, from a treating physician or otherwise, for the short period of Plaintiff's Social Security insurance coverage from March 13, 2015 to September 30, 2015. Nevertheless, the ALJ cited the general medical report of examining physician Dr. Pedro Torrellas ("Dr. Torrellas") from July 30, 2019. Tr. 19. The ALJ interpreted Dr. Torrellas' report to opine that Plaintiff's prognosis upon being discharged from the hospital four years earlier had been poor, but the ALJ deemed this opinion as unpersuasive considering Plaintiff's recovery after his tracheotomy was eliminated in 2016. Tr. 19, 6661–63.

The ALJ also noted the opinions of Plaintiff's examining general physicians Dr. Priscilla Gayor ("Dr. Gayor") and Dr. Rafael de Coss ("Dr. Coss"), who concluded that Plaintiff could only sit for one hour, stand for one hour, and walk for one hour during an eight-hour workday, but could frequently lift up to five pounds, occasionally bend and squat, and never crawl or climb. Tr. 19, 6671, 6676. Additionally, in a one-page "Certification of Medical Condition,"

9

Dr. Coss (license number "17600") opined on January 29, 2019 that Plaintiff was permanently disabled. Tr. 20, 2949, 6672, 6676. Dr. Gayor and Dr. Coss issued their opinions on August 12, 2019 and August 19, 2019—nearly four years after Plaintiff's date last insured. Tr. 2943, 2947, 6676. As such, the ALJ found their opinions unpersuasive because they were issued after the date Plaintiff was last insured and because the opinions made diagnoses of conditions which were not established in the relevant period of insurance coverage. Tr. 19, 2947, 6675. Furthermore, the ALJ found that the conclusions by Dr. Coss and Dr. Gayor were not supported by any treatment notes during the relevant time of Plaintiff's insurance coverage from March 13, 2015 through September 30, 2015. Tr. 19. Nevertheless, the ALJ did find Dr. Coss' opinion persuasive and supported "by the evidence on file" with regard to his conclusion that Plaintiff needed to avoid unprotected heights and could only occasionally be exposed to moving machinery and changes in temperature. Tr. 19, 6676. The ALJ also wrote that the one page "Certification of Medical Condition" dated January 29, 2019 was of little persuasive value because it had been authored after the date last insured but before Plaintiff received a tracheoplasty which resolved his symptoms, and because the issue of whether Plaintiff is disabled is one reserved for the Commissioner of Social Security. Tr. 20, 2949, 6672, 6676.

      Plaintiff nevertheless takes issue with the ALJ's analysis of Plaintiff's examining physicians by arguing that "there is no opinion of record which rebuts the assessments of these . . . physicians that [] [P]laintiff is unable to work." ECF No. 14 at 13.[2] However, as correctly stated by the ALJ, the determination of whether Plaintiff is disabled and unable to work is one reserved for the Commissioner of Social Security and not dependent on the opinion of any

---

[2] Plaintiff states that "three" physicians assessed Plaintiff as unable to work. However, while the "Certification of Medical Condition" lacks a name of a doctor, it bears Dr. Coss' license number "17600." Tr. 2949, 6672, 6676. Therefore, there were two physicians, not three, which assessed Plaintiff as being unable to work.

10

one physician. Smith v. Berryhill, 370 F. Supp. 3d 282, 288 (D. Mass. 2019); SSR 96-5p, 1996 WL 374183 at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. . . . the adjudicator is precluded from giving any special significance to the source; e.g., giving a treating source's opinion controlling weight, when weighing these opinions on issues reserved to the Commissioner."). Here, the ALJ did not ignore the opinions of the above examining physicians, but instead weighed their opinions based on their supportability and consistency with the record and reserved to himself the decision regarding the ultimate issue of Plaintiff's disability. In so doing, the ALJ did not err.

Plaintiff also argues that "there were no consultative exams done in this claim." ECF No. 4 at 11. If by "consultative exams" Plaintiff means that no consultative evaluations were done by non-examining physicians, Plaintiff is incorrect, as the ALJ cited two consultative evaluations completed by State agency consultants Dr. Ramón Ruiz Alonso ("Dr. Ruiz Alonso") and Dr. Carlos Jusino Berríos ("Dr. Jusino Berríos") who both determined based on the available evidence that Plaintiff did not have a medically determinable impairment. Tr. 20, 2960, 2967. Plaintiff nevertheless complains that "the ALJ seems to give more weight to the non[-]examining physicians tha[n] to the examining physicians in spite of their [opinions] being outdated by at least two years." ECF No. 14 at 11. While it is true that the state agency consultant's opinions were rendered in July 2017 and August 2018, two-to-three years after Plaintiff's date last insured, the examining physicians' opinions already discussed above were issued from three-and-a-half to almost four years after Plaintiff's date last insured. Tr. 2943, 2949, 2961, 2969, 6673. Furthermore, while the ALJ considered the evaluations of the state medical consultants, it is not evident that they were given more weight than the examining physicians. In fact, the ALJ wrote that the state agency consultant's evaluations were less persuasive because "[o]ther

medical opinions are more consistent with the record as a whole" and because the consultants "did not have the chance to review the additional evidence now in the record." Tr. 20. Consistent with that finding, the ALJ did not determine, as the state agency consultants opined, that Plaintiff does not suffer from any medical determinable impairment. Instead, the ALJ concluded that the other medical opinions and evidence introduced at Plaintiff's hearing show that Plaintiff's "chronic respiratory disorder, tracheal stenosis and status post tracheostomy were severe and imposed moderate limitations in the claimant's ability to perform work related activities." Tr. 20.

Plaintiff also argues that the ALJ's RFC determination for a full range of light work was made "without consideration of the need for frequent changes in position and the effects of [Plaintiff's] various respiratory diagnoses and their onset of severity." ECF No. 14 at 6. Plaintiff cites no evidence in support of his assertion that any of Plaintiff's conditions <u>during the relevant period</u> required frequent changes in position, and the ALJ's assessment of the evidence regarding Plaintiff's various diagnoses is adequate to support the ALJ's RFC assessment. Indeed, the ALJ's RFC determination concludes that Plaintiff had some postural limitations, only being able to sit, stand, and walk 6 hours in an eight hour workday and also stated that Plaintiff had some environmental limitations pertaining to his respiratory system such as being able to be only occasionally exposed to "dust, odors, fumes, and pulmonary irritants." Tr. 17.[3]

---

[3] Plaintiff also makes a passing argument of a single sentence stating, "Plaintiff's statements remain uncontroverted especially in regards to his pain, tiredness and effects of being overweight." ECF No. 14 at 11. Plaintiff cites no evidence in the record to support this assertion. While Plaintiff did complain of pain and fatigue in his function report dated May 18, 2017 (over a year-and-half after his date last insured), notes from Plaintiff's hospitalization during his period of insurance coverage do not indicate complaints of pain, or at the very most, only 5/10 pain. <u>Compare</u> e.g. Tr. 83, 86, 88, 92, 93, 97 <u>with</u> Tr. 399, 400, 401, 402, 403, 404, 461, 463 <u>but see</u> Tr. 404 (reporting 5/10 pain). Additionally, notes from Plaintiff's hospitalization, although showing a checked box for "overweight" actually indicate that Plaintiff only weighed 84 pounds, which was "74%" of his "[i]deal [w]eight" of 115 pounds. Tr. 403, 404. Even so, the ALJ communicated in his decision that "Some postural, exertional and environmental limitations were included, as warranted by his allegations of severe pain and fatigue." Tr. 20.

In sum, Plaintiff fails in his burden to show any legal error on the part of the ALJ in formulating the RFC. Given the short period of time during which Plaintiff had Social Security insurance coverage, the ALJ adequately drew on evidence during and outside the period of coverage in weighing the medical opinions and other evidence in the record for supportability and consistency. The ALJ also weighed the opinions Plaintiff's examining physicians and assessed their supportability and consistency in comparison to the medical record and the consultative examinations of Plaintiff. The ALJ's RFC determination is therefore supported by substantial evidence.

### B. The ALJ's Step Four Determination

Plaintiff also objects to the ALJ's decision that Plaintiff could return to his past relevant work as a professor based on Plaintiff's RFC, but attacks this determination not on step four grounds but instead on step five grounds which the ALJ did not reach. ECF No. 14 at 5. Plaintiff misstates the ALJ's decision, writing that "[t]he ALJ established there were sufficient numbers in the 'National' economy. No description on how the ALJ reached that conclusion was forthcoming in the decision[.]" ECF No. 14 at 5.

Plaintiff's objection fails for two reasons. First, contrary to Plaintiff's assertions, an examination of the ALJ's decision shows that the ALJ made no statement whatsoever about the number of professor positions in the national economy. See Tr. 20-21. Second, a determination regarding the number of occupations in the national economy occurs at the step five stage, which the ALJ was not obligated to reach. At step four, the ALJ analyzes whether a claimant's impairments prevent him from doing his past relevant work. 20 C.F.R. § 404.1520(f). As with the three previous steps in the sequential process, at step four it remains the claimant's burden to show he cannot perform his past relevant work. Cameron v. Berryhill, 356 F. Supp. 186, 192–93

(D. Mass. 2019). If the claimant can "still do this kind of work" which he did in the past, then the ALJ will find that the claimant is not disabled at step four. 20 C.F.R. § 404.1520(f). Once an ALJ finds that a Plaintiff can do his past work and is not disabled, the ALJ will not proceed to step five. 20 CFR 404.1560(b)(3). Because an ALJ is to stop the analysis at step four and should not proceed to step five, the ALJ "will not consider [the claimant's] vocational factors of age, education, and work experience or whether [the claimant's] past relevant work exists in significant numbers in the national economy." Id. Therefore, the ALJ committed no error when he did not discuss or analyze whether the Plaintiff's past relevant job as a professor was a profession available in significant numbers in the national economy after he had determined that Plaintiff could perform his past relevant work at step four.

C. The Appeals Council's Decision

Finally, Plaintiff argues that an "egregious error[] of law" was committed when the Appeals Council "refused to address the arguments presented in the request for review of the ALJ's decision in spite of having received additional pertinent medical evidence which supported the plaintiff's complaints since before the date last insured." ECF No. 14 at 5–6. Plaintiff's argument cannot prosper. In interpreting the pertinent regulations, the United States Supreme Court has declared that "[t]he Appeals Council's review is discretionary: It may deny even a timely request without issuing a decision." Smith v. Berryhill, 139 S. Ct. 1765, 1772 (2019) (citing 20 C.F.R. § 416.1481). However, while the First Circuit Court of Appeals recognizes that "the Appeals Council need not and often does not give reasons . . . it has been well established that a discretionary decision may be reviewable to the extent that it rests on an explicit mistake of law or other egregious error." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001) (agreeing with other circuits that "an Appeals Council denial of review is itself reviewable to

some degree and in some limited circumstances."). Specifically, "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action." Id. While it is true that review of an ALJ's decision can only be based on the evidence presented before the ALJ, the Appeals Council may nevertheless make a mistake meriting correction when it refuses to consider new evidence presented to it after the ALJ's decision "depending on the ground [the Appeals Council] gave." Id. Based on 42 U.S.C. § 405(g), "the Appeals Council is free to consider new material evidence regardless of whether there was good cause for not producing it earlier"; however, "the court is not free to order a remand absent such good cause." Id. at 5–6 (citing 42 U.S.C. § 405(g)).

Despite Plaintiff's arguments regarding "additional pertinent medical evidence," Plaintiff has not cited to any specific new medical evidence in the record which he brought to the attention of the Appeals Council's after the ALJ's decision had been rendered, nor does he explain how such evidence would have been material to the outcome of his claim. Nor does Plaintiff assert that there was good cause for submitting any new evidence not submitted to the ALJ. Mills, 244 F.3d at 5–6. Indeed, while the Appeals Council's "Notice of Appeals Council Action" acknowledges Plaintiff's arguments for why he disagrees with the ALJ's decision and notes that it received a "Request for Review of Hearing Decision/Order (HA 520) from Anderson Serrano, Esq. dated December 19, 2019" and "Representative brief from Anderson Serrano, Esq. dated December 19, 2019," it does not mention having received any new medical evidence from Plaintiff or his legal representation. Tr. 1, 5. As such, the Appeals Council was not required to provide reasons for its decision to reject Plaintiff's substantive arguments disagreeing with the decision of the ALJ, and Plaintiff has failed to show that he submitted new

material evidence to the Appeals Council which it rejected on grounds which were egregiously mistaken. No remand is therefore warranted based on the Appeals Council's decision.

## IV.     Conclusion

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence and contained no legal error. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 26th day of July, 2023.

s/Marcos E. López  
U.S. Magistrate Judge